CHARLES McINTIER *vs.* QUINCY A. SHAW & another.

In order to constitute a mortgage, it is not necessary that a bond of defeasance from the grantee to the grantor in a deed should bear the same date as the deed. *But if,* after the making of such a bond, a deed has been given in accordance with its terms, and afterwards the premises are reconveyed to the obligor, and it is agreed that the same bond shall continue in force for the same purpose, this will amount to a redelivery of the bond, and make the transaction a mortgage.

The owner of the equity of redemption of land which is subject to two mortgages cannot, after the expiration of three years from the time of an entry by the first mortgagee to foreclose, maintain a bill in equity to be let in to prosecute a bill to redeem brought within the three years by the second mortgagee; or to procure an injunction against the first mortgagee, to prevent him from serving an execution for possession issued upon a judgment under the act respecting forcible entry and detainer; or to set aside the first mortgage in part, for fraud in the loan which it was given to secure.

BILL IN EQUITY to redeem land from a mortgage, and praying for an injunction to restrain the service of an execution for possession thereof, and for a decree setting aside the mortgage in part, and for other relief. The defendants filed a general demurrer. The case is stated in the opinion.

*C. A. Welch,* for the defendants.

*N. Richardson,* for the plaintiff.

CHAPMAN, J.*  The material facts stated in the bill are the following: The plaintiff purchased certain real estate situated in Winchester, called the Black Horse Tavern, subject to a mortgage then existing, and took a deed to one Morrison who was his clerk. Afterwards, on the 12th of April 1847, by request of the plaintiff, Morrison conveyed the land to the defendant Hubbard, by an absolute deed, and Hubbard gave a bond to the plaintiff, for its conveyance to him on payment of about the sum of $1300 which he owed to Hubbard. On the 17th of September 1855, in pursuance of an arrangement made by the plaintiff with the defendant Shaw, Hubbard conveyed the land to the plaintiff, and the plaintiff mortgaged it to Shaw to secure the payment of a note of $8000 payable in five years with annual interest, and conveyed the equity of redemption to

---

* HOAR, J. did not sit in this case.

Hubbard by an absolute deed. On the 27th of September 1857 the interest being unpaid, Shaw entered for foreclosure, and the plaintiff remained in possession under an agreement that he should pay rent to Shaw. This bill was filed a few days after the expiration of three years from the time of the entry for foreclosure.

But the bill alleges that on the 17th of September 1855, when the equity was conveyed to Hubbard, the plaintiff had paid so much of his debt of $1300 to Hubbard that there was only a balance of about $700 due upon it; that the conveyance was for no other purpose but to secure this balance; and that it was then agreed that Hubbard's bond to convey the land to the plaintiff should remain in the plaintiff's hands as security for the reconveyance to him upon payment of the balance due. This would operate as a redelivery of the bond, and would make Hubbard a mortgagee of the equity. It is not necessary that the deed and bond of defeasance should both bear the same date, in order to constitute a mortgage. *Harrison* v. *Phillips' Academy*, 12 Mass. 455. *Newhall* v. *Burt*, 7 Pick. 157. The plaintiff would have a right to redeem both mortgages, by bringing his bill seasonably. Or if there were any such irregularity in the terms of the bond as to prevent the plaintiff from acquiring all the rights of a mortgagor under it, he certainly could not thereby acquire greater rights than those of a mortgagor. We assume, upon the allegations of the bill, that he acquired all the rights of a mortgagor.

Upon the plaintiff's own showing, he has failed to commence a suit against Shaw for redemption until after the expiration of the time prescribed by the statute. But he alleges that before the expiration of that time he called on Hubbard and offered to pay the amount due to him upon a fair and legal adjustment of the balance, and thereupon, on or before the 17th of September 1860, Hubbard brought a bill against Shaw to redeem. And he complains that Shaw has not answered Hubbard's bill, and Hubbard does not prosecute it. He seeks, by the present suit, to obtain a decree of the court by which he shall be let in to prosecute Hubbard's suit for redemption. He

further alleges that Shaw defrauded him in the loan for which the mortgage was given, and seeks to obtain a reduction of the amount due to Shaw for that reason; and he prays that the mortgage may be set aside, so far as the fraud shall be made to appear. He alleges that Shaw has obtained a judgment against him for the possession of the premises under the landlord and tenant act, and that a writ of possession has been issued thereupon, and that Shaw threatens to eject him from the premises, and prays for an injunction prohibiting Shaw from executing his writ of possession.

But the bill states no legal or equitable ground on which the court can interfere with Hubbard in the prosecution of his suit to redeem. It states no legal or equitable obligation of Hubbard to advance money or bestow labor in the prosecution of the suit for the plaintiff's benefit. It is contended that he is the trustee of the plaintiff. It is true that a mortgagee is a trustee of the mortgagor, but the trust is of an extremely limited character. He holds the legal estate in trust to reconvey it on performance of the condition within the time limited by statute. If it is redeemed after he has taken possession, he holds it in trust also to account for rents and profits. But there is no foundation for the idea that if his mortgage is subject to a prior mortgage he is under any obligation to redeem the prior mortgage, or to prosecute a suit for the purpose, or to do any act to prevent the first mortgagee from foreclosing. Yet such a doctrine is necessary in order to maintain the plaintiff's bill. Whether the alleged frauds could be inquired into under Hubbard's bill, need not be discussed. It follows from the foregoing views that there is no ground for any interference with the execution of Shaw's writ of possession.          *Demurrer sustained*